**Theo FARNSWORTH, Plaintiff–Appellant,**

v.

**SOCIAL SECURITY ADMINISTRATION, Defendant–Appellee.**

**No. 15–11059**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Feb. 26, 2016.

---

Theo Farnsworth, Miramar Beach, FL, pro se.

Katie M. Gaughan, Social Security Administration Office of General Counsel, Region III, Philadelphia, PA, Peter G. Fisher, U.S. Attorney's Office, Tallahassee, FL, Pamela C. Marsh, U.S. Attorney's Office, Pensacola, FL, for Defendant–Appellee.

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Theo Farnsworth appeals *pro se* the denial of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). On appeal, Farnsworth, who has ADHD and Autism Spectrum Disorder, argues that the Administrative Law Judge ("ALJ") failed to properly weigh the opinions of two of his mental health counselors, a nontreating medical consultant, and a disability analyst. After review, we affirm.

## I. GENERAL PRINCIPLES

We review the ALJ's "decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc., Sec.,* 363 F.3d 1155, 1158 (11th Cir.2004) (internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997). We may not reweigh the evidence or decide facts anew, and must affirm if the ALJ's decision is supported by substantial evidence, even if the evidence preponderates against it. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir.2005) (quotation marks omitted).

To receive DIB and SSI benefits, the claimant must prove that he is disabled. 42 U.S.C. §§ 423(a), 1382(a)(1)-(2), 1382c(a)(3)(B); *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir.2003). A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

To determine whether a claimant is disabled, the Social Security regulations provide a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). If the ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the ALJ assesses whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform his past relevant work, in

light of his residual functional capacity ("RFC"); and (5) can make an adjustment to other work, in light of his RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

## II. ALJ'S FINDINGS

Here, the ALJ found, at step one, that Farnsworth was not disabled from July 1, 2011 through the March 2012 hearing date because Farnsworth admitted at his hearing that he had been working full time since July 1, 2011 as a contract employee for a government contractor that collects data for the Department of Labor. As for the 12-month period before July 1, 2011, the ALJ found, at step four, that Farnsworth was not disabled because, despite his severe impairments of autism, ADD, and narcissistic personality disorder, he had the RFC to perform his past relevant work as a cook.

With regard to Farnsworth's RFC, the ALJ found that he could "perform a full range of work at all exertional levels" with the non-exertional limitations that he avoid: (1) "production-paced work with hard-target quotas"; (2) "work around heights or hazardous substances"; and (3) "interaction with the general public." In reaching this RFC finding, the ALJ evaluated various medical and non-medical source opinions.

Relevant to this appeal, the ALJ gave "significant weight" to the opinions of Dr. Jessy Sadovnik, a state consulting psychologist, who reviewed the medical evidence and completed a mental RFC assessment and psychiatric review technique in November 2010. According to Dr. Sadovnik, Farnsworth had moderate limitations in his ability to concentrate, perform activities within a schedule, complete a normal work day or week without interruption from his psychologically based symptoms, accept instructions, get along with co-

workers, maintain socially appropriate behavior, set realistic goals, and respond appropriately to changes in the workplace. However, Farnsworth's "overall mental health status and his reported [activities of daily living] suggest[ed] that he [was] capable of performing simple and repetitive activities that would allow him to function in a workplace environment."

Although Farnsworth has "social difficulties related to his Asperger's condition," Dr. Sadovnik opined that Farnsworth also has "the ability to relate effectively when he chooses to do so." Dr. Sadovnik concluded that Farnsworth is "capable of performing routine tasks independently" based on Farnsworth's history of employment over several years, and his ability to perform activities of daily living, high average intelligence, overall mental health status, "with some concentration problems noted." The ALJ explained that he gave Dr. Sadovnik's "comprehensive assessment" significant weight because it "was based on a review of the objective medical evidence contained in the file."

The ALJ discounted the opinions of Linda Buckland and Nancy Shue, two licensed mental health counselors who had counseled Farnsworth. On June 21, 2011, just before Farnsworth began working for the government contractor in July 2011, Buckland and Shue each completed a "Medical Source Statement (Mental)" form. Buckland and Shue agreed that Farnsworth had: (1) "extreme" impairments in his ability to get along with coworkers, maintain attention and concentration for extended periods, complete a normal workday or workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to supervision; and (2) marked impairments in his ability to understand,

remember, and carry out complex instructions, and sustain a routine without special supervision.

The ALJ acknowledged Buckland's and Shue's Medical Source Statements indicating extreme impairments, but found that these "reports [were] not substantiated by many corresponding treatment notes and they [were] contradicted by the fact that [Farnsworth] has in fact been able to function appropriately enough at work to sustain his job for eight months." The ALJ concluded that Farnsworth's "recent work activities would [not] have been possible if he had 'marked/extreme' impairments" as noted by Buckland and Shue.

The ALJ also gave no weight to the opinion of Mark Laufer, a disability analyst who completed a comprehensive vocational evaluation in June 2009 at the request of the Florida Division of Vocational Rehabilitation. In the 2009 evaluation, Laufer opined that Farnsworth was not a good candidate for vocational rehabilitation services because, although he had high aptitudes and academic skills, Farnsworth had "an inability to sustain employment for more than a few months at a time," and "currently appears to be capable of identifying and securing employment but not maintaining it." In discounting Laufer's opinion, the ALJ explained that Laufer was "not an acceptable medical source," and that his opinion was inconsistent with Farnsworth's hearing testimony "that he has worked full time at the same position since July 2011...."

The ALJ concluded, based on the evidence, that although Farnsworth's "limitations due to his impairments have resulted in significantly decreased residual functional capacity, he is not precluded from all work in the enormous economy of the United States" and that the RFC finding accommodated Farnsworth's autism and ADD. The ALJ stressed, "It is most important to note that the claimant is currently working full time and he has been working at the same job with the same company since July 2011."

## III. FARNSWORTH'S CLAIMS

### A. Claims Not Properly Raised on Appeal

As an initial matter, we note that Farnsworth's *pro se* brief is difficult to follow. Farnsworth's statement of the issues contains a list of 14 issues, many of which are not addressed further. The summary of the argument covers over 40 pages and consists mostly of citations followed by brief statements about each case cited, but does not summarize Farnsworth's own appellate arguments. The argument portion of his brief lists 23 alleged errors by the ALJ and the district court, many without further elaboration or substantive legal argument. Throughout his brief, Farnsworth makes numerous arguments that he did not raise in the district court, including, *inter alia*, whether the ALJ improperly discredited his hearing testimony, failed to fully develop the record, misapplied the vocational grids, or should have taken testimony from a vocational expert, whether the ALJ's RFC finding was supported by the record, and whether Farnsworth received effective assistance of counsel and a full and fair hearing.

We generally do not address arguments that were not raise in the district court. *Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir.1994) ("As a general principle, this Court will not address an argument that has not been raised in the district court."); *see also Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir.1999). Accordingly, we limit our appellate review to the issues Farnsworth argued before the district court. Construed liberally, the crux of Farnsworth's

argument is that the ALJ did not give proper weight to the medical opinions of Sadovnik, Buckland, and Shue or to the opinion of Laufer, the state disability analyst.[1]

## B. Medical Source Opinions

■ We find no reversible error in the ALJ's decision to give significant weight to Dr. Sadovnik and to discount the opinions of Buckland and Shue as to the degree of Farnsworth's mental limitations.[2] Dr. Sadovnik opined that Farnsworth had only moderate limitations in concentration, persistence, and pace and in maintaining socially appropriate behavior, with only mild limits in ADLs. The ALJ adequately explained that she gave Dr. Sadovnik's opinion great weight because it was a comprehensive assessment based on the objective medical evidence in the record. *See Winschel v. Comm'r of Soc., Sec.,* 631 F.3d 1176, 1179 (11th Cir.2011) ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."). The ALJ also adequately explained that she discounted Buckland's and Shue's assessments of more severe (i.e., marked or extreme) limitations because they were not supported

by many treatment notes and were contradicted by the fact that Farnsworth was actually working for the last eight months. Moreover, the ALJ's stated reasons are supported by substantial evidence in the record.

Farnsworth had received mental health treatment and medication management from the Bridgeway Center for the past ten years. According to Bridgeway Center's medical records, Farnsworth responded well to medication (ADHD medication and an antidepressant) and generally had GAF scores in the 65 to 80 range.[3] During his visits, Farnsworth was reported as pleasant and cooperative, with logical thought and good insight and judgment. Farnsworth occasionally reported losing a job, but he did not report significant problems concentrating or behaving in a socially appropriate way. At the Bridgeway Center, Shue conducted a coping-skills group for people with ADHD, which it appears Farnsworth attended between 2005 and 2008. The record, however, does not contain any progress notes from Shue.

Farnsworth was not diagnosed with Asperger's Disorder until 2009, when Dr. Jul-

---

1. Farnsworth also contended that the transcript of his ALJ hearing contained typographical errors and that he was denied a copy of the recording of the hearing. Farnsworth, however, has not explained how any of these typographical errors prejudiced him either in the administrative proceedings or on judicial review. Therefore, we find no reversible error on this point and do not address this issue further.

2. Our review is limited to whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. *Winschel v. Comm'r of Soc., Sec.,* 631 F.3d 1176, 1178 (11th Cir.2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Under

this limited standard of review, we do not make findings of fact, reweigh the evidence, or substitute our judgment for that of the ALJ. *Id.*

3. Global Assessment of Functioning, or GAF, is a standard measurement of an individual's overall functioning "with respect only to psychological, social, and occupational functioning" using a 1 to 100 point scale. *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* 30–32 (4th ed. 2000) (DSM–IV). A score between 51 and 60 indicates moderate symptoms or difficulty in functioning, a score between 61 and 71 shows mild symptoms or some difficulty in functioning, while a score between 71 and 80 represents no more than slight impairment. *Id.* at 32.

ie Harper, a licensed psychologist at Bridgeway Center, performed a psychological evaluation as part of state vocational rehabilitation services. Farnsworth reported speaking bluntly at work and having difficulty understanding "corporate language." Farnsworth also reported a tendency to become bored and easily distracted, which led to his being fired, and that he had lost his last job after six months. Testing revealed Farnsworth had a high average IQ and excellent non-verbal abilities, but was limited in his ability to concentrate over fifteen minutes. In addition to confirming Farnsworth's ADHD diagnosis, Dr. Harper determined that Farnsworth's social difficulties extended beyond his ADHD. Dr. Harper concluded that Farnsworth's difficulties showing emotion and recognizing boundaries were consistent with Asperger's Disorder "with Narcissistic Features." Dr. Harper opined that Farnsworth would be best suited for work that offered variety, emphasized non-verbal activities, did not require keen attention to detail, and provided clear standards for work relationships. Dr. Harper did not opine that Farnsworth's mental impairments made him unemployable.[4]

Between October 2009 and July 2010, Farnsworth attended seven counseling sessions with Buckland. Buckland engaged in role-playing and other exercises to help Farnsworth recognize others' social cues and learn to respond more appropriately during interpersonal interactions. Buckland's treatment notes indicate, however, that these sessions dealt primarily with trying to improve Farnsworth's relationship with his estranged wife. There was no explicit mention of difficulties at work.

During this period, Farnsworth discontinued taking his medications, explaining that he had been taking them for his wife, rather than for himself.

Similarly, in August 2010, Farnsworth and his estranged wife visited Dr. Nelson Handal at Dothan Behavioral Medicine for Farnsworth's difficulties communicating with his wife. During this visit, Dr. Handal found that Farnsworth exhibited appropriate behavior and was cooperative, with logical thought process and fair insight and judgment. Dr. Handal gave Farnsworth a GAF score of 51 to 60, one of the only times Farnsworth received a score below 60. Dr. Handal prescribed Abilify, which is sometimes used to treat irritability in autistic patients, and advised Farnsworth to continue couples therapy.

In October 2010, Dr. Alexander Kolevzon at Mt. Sinai Medical Center evaluated Farnsworth as part of an autism study. Dr. Kolevzon noted that during the evaluation Farnsworth was restless, had trouble staying on topic, and sometimes interacted inappropriately, but that he also had good eye contact and used facial expressions well. After performing diagnostic tests, Dr. Kolevzon opined that Farnsworth tested in the autism range. As to verbal communication, Farnsworth's speech was communicative and complex, but he also spoke loudly and often used odd language, such as invented words. Farnsworth's non-verbal communication, however, was strong, especially his use of appropriate gestures. With respect to social skills, Farnsworth showed strengths in his use of facial expressions and in describing his own emotional states and the emotional states of others, but he had difficulties engaging in appropriate and two-sided

---

4. In a 2010 follow-up evaluation, Dr. Harper reached essentially the same conclusions, but noted also that Farnsworth spoke with an unusually loud voice and had a personality disturbance that reached the level of narcissistic personality disorder. Dr. Harper also gave Farnsworth a GAF score of 77.

conversations, and understanding his role in social relationships such as friend, spouse or coworker. Dr. Kolevzon found that Farnsworth was "quite invested" in his Asperger's diagnosis "as a means to explain the difficulties he has had in his life, particularly around relationships and vocational problems." Dr. Kolevzon confirmed Farnsworth's high-average IQ with superior abstract reasoning skills. Dr. Kolevzon noted that Farnsworth had reported losing many jobs, which he thought was the result of "what [Farnsworth] called the 'creep factor'" and "speaking about sex with co-workers before he understood how inappropriate that was." Dr. Kolevzon did not opine that Farnsworth's difficulties prevented him from working. Rather, Dr. Kolevzon concluded that Farnsworth would benefit from, among other things, resuming his medication, individual psychotherapy, social skills and vocational training, and job coaching.

In a March 2012 letter, Buckland stated that she continued to provide counseling to Farnsworth as part of his state vocational rehabilitation services, but there are no progress notes from Buckland after July 2010. Buckland's letter stated that Farnsworth had been employed since June 2011 with an employer that provided accommodations and a supportive supervisor.[5] Buckland explained that the focus of their sessions was to help Farnsworth "adjust to the demands of his current job." Buckland opined that Farnsworth's was "making progress," but would continue to need support, such as "job coaches, therapy with someone who understands and works with those who have Autistic Spectrum Disorders or accommodations provided by a workplace."[6]

Dr. Sadovnik's assessment of the severity of Farnsworth's mental limitations is consistent with this medical evidence, including the longitudinal treatment records at Bridgeway Center and the opinions and testing results of Drs. Harper and Kolevzon, two examining medical sources. Accordingly, the ALJ did not err in concluding that Dr. Sadovnik's opinion, like the opinions of Drs. Harper and Kolevzon, was entitled to significant weight. *See Edwards v. Sullivan*, 937 F.2d 580, 584–85 (11th Cir.1991) (concluding that an ALJ may rely upon the opinion of non-examining medical source when it does not conflict with those of examining sources).[7]

■ Furthermore, the ALJ properly discounted the medical source statements completed by Buckland and Shue. There is no merit to Farnsworth's contention that, as treating sources, their opinions should have been given controlling weight. Buckland and Shue were mental health counselors, not physicians or psychologists, and thus were not "acceptable medical sources" under the regulations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (providing that

---

**5.** Although Buckland's letter states that Farnsworth began working in June 2011, Farnsworth testified that he began working July 2011.

**6.** At the hearing, the ALJ asked about the lack of progress notes from Buckland and Shue, and Farnsworth's counsel replied that he had tried to obtain them. The ALJ also asked for documentation of the accommodations Farnsworth's current employer had made, and was told the current employer was unwilling to provide them for legal reasons.

**7.** The record belies Farnsworth's claim that the ALJ should not have relied on Dr. Sadovnik's assessment because it was completed "before many reports were even done." The only medical evidence that post-dated Dr. Sadovnik's psychiatric review technique and mental RFC assessment was the conclusory medical source statements from Buckland and Shue. Moreover, Farnsworth does not explain why any "reports" completed after Dr. Sadovnik's assessment rendered his opinion unreliable.

acceptable medical sources include licensed physicians and psychologists). Instead, Buckland and Shue were other medical sources. SSR 06–03p, 2006 WL 2329939, at *1–2 (Aug. 9, 2006) (explaining that medical sources include both acceptable medical sources and other health care providers who are not acceptable medical sources). While the ALJ was required to consider the opinions of Buckland and Shue as other medical sources, the ALJ was not required to give their opinions controlling weight over the opinions of acceptable medical sources, such as Dr. Sadovnik. *See* 20 C.F.R. §§ 404.1513(d)(1), 404.1527(c), 416.913(d)(1), 416.927(c); SSR 06–03p, 2006 WL 2329939, at *2, *6 (explaining that "only 'acceptable medical sources' can be considered treating sources ... whose medical opinions may be entitled to controlling weight").

■ Furthermore, the ALJ provided a sufficient reason for discounting the opinions of Buckland and Shue as to the severity of Farnsworth's mental impairments. *See Crawford v. Comm'r of Soc., Sec.*, 363 F.3d 1155, 1159 (11th Cir.2004) (explaining that even a treating physician's opinion may be discounted if "it is not accompanied by objective medical evidence or is wholly conclusory" (quotation marks omitted)); *see also* SSR 06–03p, 2006 WL 2329939, at *4 (stating that factors in considering "other sources" evidence, such as other medical source opinions, include "[h]ow consistent the opinion is with other evidence," the "degree to which the source presents relevant evidence to support an opinion," and "[h]ow well the source explains the opinion").

And, the ALJ's reason is supported by the record. There were no treatment or progress notes from Shue. The few progress notes from Buckland suggest that the primary focus of their sessions was Farnsworth's relationship with his wife. Buckland's progress notes do not explicitly address Farnsworth's workplace limitations. Notably, neither Buckland nor Shue provided any additional information on their completed forms about Farnsworth and his mental impairments to support their opinions. Indeed, despite the fact that the forms themselves state that the information given is "[i]n addition to the information provided in your narrative report," neither Buckland's form nor Shue's form was accompanied by a narrative report. Buckland's subsequent 2012 letter indicates that Farnsworth began working at about the same time she and Shue completed their forms. The ALJ found that Farnsworth's "recent work activities would [not] have been possible if he had 'marked/extreme' impairments" as Buckland and Shue had opined.

## C. Laufer's Vocational Evaluation

■ The ALJ also properly rejected disability analyst Laufer's opinion. In his vocational evaluation, Laufer opined that Farnsworth was not a good candidate for vocational services because he "currently appears to be capable of identifying and securing employment but not maintaining it." The ALJ gave Laufer's opinion no weight because Laufer was "not an acceptable medical source," and Farnsworth had testified at the hearing that he was currently working "full time at the same position" he had held for the last eight months.

As a disability analyst, Laufer is not a medical source at all, much less an "acceptable medical source." *See* SSR 06–03p, 2006 WL 2329939, at *1. Rather, Laufer is a " 'non-medical source' who has seen the individual in his or her professional capacity." *Id.* at *5; *see also* 20 C.F.R. §§ 404.1513(d)(3), 416.913(d)(3). Although the ALJ should consider evidence from non-medical sources, the ALJ is not required to assign the evidence any

particular weight. SSR 06–03p, 2006 WL 2329939, at *3–4. Instead, whether and how much weight the ALJ should give this kind of evidence depends upon the particular facts of the case and a variety of factors, including whether the opinion is consistent with other evidence in the record. *Id.* at *4.

Here, the ALJ concluded that Laufer's opinion that Farnsworth would be unable to maintain employment for more than a few months was not consistent with Farnsworth's testimony. We agree. Farnsworth's testimony, as well as other record evidence, seriously undermines Laufer's opinion. The record shows that with Buckland's job coaching, paid for by Florida's Division of Vocational Rehabilitation, Farnsworth was able to maintain his employment with the government contractor for about ten months in 2011 and 2012.[8] Furthermore, Buckland's 2012 letter suggests that, while the path for Farnsworth has not been an easy one, he continues to make progress and is able to maintain employment for extended periods with supportive counseling.

As the government correctly points out, other information in Laufer's vocational evaluation also contradicts his opinion that Farnsworth could not maintain employment. Specifically, the evaluation states that, at the time of Laufer's 2009 interview with Farnsworth, Farnsworth had been working for a year as a commission salesperson selling credit card processing equipment to businesses. In addition, Farnsworth's reported work history shows he managed to work as a cook in a hotel

for eight months in 2008. Under the circumstances, the ALJ's decision to assign no weight to Laufer's opinion is supported by substantial evidence.

For all these reasons, we conclude that the ALJ committed no error in weighing the medical and non-medical source opinions and that substantial evidence supports the ALJ's determination that Farnsworth was not disabled.[9]

**AFFIRMED.**

---

8. According to a separation letter filed after Farnsworth's hearing, he continued to work for the government contractor for about two more months, until May 2012, which was when Farnsworth testified his employment contract would end. Thus, it appears Farnsworth was never fired from this job.

9. Farnsworth's motion seeking to order the government to provide copies of the caselaw cited in its appellate brief, or alternatively, striking those citations from the brief, is **DENIED.** Farnsworth's request for a 60-day extension to file a second reply brief is also **DENIED.**