IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 EASTERN DIVISION 

ADRIANNA PUGH, ) 
 ) 
Plaintiff, ) 
 ) 
v. ) Case No. 3:19-cv-00790-SRW 
 ) 
ANDREW SAUL, ) 
Commissioner of Social Security, ) 
 ) 
Defendant. ) 

 MEMORANDUM OPINION AND ORDER1 
I. Introduction 
Plaintiff Adrianna Jalisa Pugh2 commenced this action on October 16, 2019, 
pursuant to 41 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse 
decision of the Commissioner of Social Security (“the Commissioner”) denying her 
application for a period of disability and disability insurance benefits (“DIB”) under Title 
II of the Social Security Act (“the Act”). See Docs. 1, 15. Plaintiff filed her application on 
June 16, 2016, alleging that she became disabled on October 1, 2013. Doc. 17-4 at 31, R. 
197. Plaintiff’s application was denied at the administrative level on November 14, 2016. 
Doc. 17-5 at 2-4, R. 198-200. Plaintiff requested and received a hearing before an 

1 For purposes of this appeal, the court uses the Code of Federal Regulations (“C.F.R.”) that was 
effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim 
was filed at the administrative level. See 20 C.F.R. Part 404 and 416, effective March 27, 2017; 
see also https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3. 

2 As confirmed by the ALJ during plaintiff’s administrative hearing, documents in the record 
making reference to Adrianna Jalisa Pugh Howard also refer to the plaintiff. See Doc. 17-3 at 46-
Administrative Law Judge (“ALJ”). Docs. 17-3 at 38-76, R. 129-67; 17-5 at 10-11, R. 206-
07. On February 8, 2019, ALJ Robin R. Palenske issued an adverse decision after holding 
a hearing on plaintiff’s DIB application. Doc. 17-2 at 11-25, R. 10-24. On September 27, 

2019, the Appeals Council denied plaintiff’s request for review and the ALJ’s decision 
became the final decision of the Commissioner. Doc. 17-2 at 3-6, R. 2-5; Chester v. Bowen, 
792 F.2d 129, 131 (11th Cir. 1986). 
In the instant appeal, plaintiff asks the court to reverse the Commissioner’s decision 
and award benefits or, in the alternative, to remand this cause to the Commissioner for 

further proceedings. Docs. 1 at 1-2; 15 at 18. This case is ripe for review pursuant to 42 
U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal 
Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and 
entry of a final judgment by the undersigned United States Magistrate Judge. See Docs. 10, 
11. Based on the court’s review of the parties’ submissions, the relevant law, and the record 

as a whole, the Commissioner’s decision will be reversed and remanded for further 
proceedings. 
II. Standard of Review 
The court’s review of the Commissioner’s decision is a limited one. This court must 
find the Commissioner’s decision conclusive if it is supported by substantial evidence. 42 

U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). “Substantial 
evidence is more than a scintilla,” but less than a preponderance, “and is such relevant 
evidence as a reasonable person would accept as adequate to support a conclusion.” 

 2 
Crawford v. Comm’r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (“Even if the 
evidence preponderates against the Commissioner’s findings, [a reviewing court] must 
affirm if the decision reached is supported by substantial evidence”) (citations omitted). 

The court will reverse the Commissioner’s decision if it is convinced that the decision was 
not supported by substantial evidence or that the proper legal standards were not applied. 
Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not 
warranted even if the court itself would have reached a result contrary to that of the 
factfinder. See Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing 

court may not look only to those parts of the record which support the decision of the ALJ, 
but instead must view the record in its entirety and take account of evidence which detracts 
from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th 
Cir. 1986). 
[The court must] . . . scrutinize the record in its entirety to determine the 
reasonableness of the [Commissioner’s] . . . factual findings. . . . No similar 
presumption of validity attaches to the [Commissioner’s] . . . legal 
conclusions, including determination of the proper standards to be applied in 
evaluating claims. 

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). 
To qualify for disability benefits and establish his or her entitlement for a period of 
disability, a person must be unable to: 
engage in any substantial gainful activity by reason of any medically 
determinable physical or mental impairment which can be expected to result 
in death or which has lasted or can be expected to last for a continuous period 
of not less than 12 months. 

 3 
42 U.S.C. § 423(d)(1)(A).3 To make this determination, the Commissioner employs a five-
step, sequential evaluation process. See 20 C.F.R. §§ 404.1520; 416.920. 
(1) Is the person presently unemployed? 
(2) Is the person’s impairment severe? 
(3) Does the person’s impairment meet or equal one of the specific 
impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of 
Impairments]? 
(4) Is the person unable to perform his or her former occupation? 
(5) Is the person unable to perform any other work within the economy? 
An affirmative answer to any of the above questions leads either to the next 
question, or, on steps three and five, to a finding of disability. A negative 
answer to any question, other than step three, leads to a determination of “not 
disabled.” 

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).4 
The burden of proof rests on the claimant through step four. See Phillips v. Barnhart, 
357 F.3d 1232, 1237–39 (11th Cir. 2004); see also Ellison v. Barnhart, 355 F.3d 1272, 
1276 (11th Cir. 2003). A claimant establishes a prima facie case of qualifying disability 
once he or she has carried the burden of proof from step one through step four. At step five, 
the burden shifts to the Commissioner, who must then show that there are a significant 
number of jobs in the national economy that the claimant can perform. Id. 

3 A “physical or mental impairment” is one resulting from anatomical, physiological, or 
psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory 
diagnostic techniques. 42 U.S.C. § 423(d)(3). 

4McDaniel is a supplemental security income (SSI) case. The same sequence applies to disability 
insurance benefits brought under Title II of the Social Security Act. Supplemental security income 
cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title 
II cases, and vice versa. See, e.g., Ware v. Schweiker, 651 F.2d 408, 412 (5th Cir. 1981); Smith v. 
Comm’r of Soc. Sec., 486 F. App’x 874, 876 n.* (11th Cir. 2012) (“The definition of disability and 
the test used to determine whether a person has a disability is the same for claims seeking disability 
insurance benefits or supplemental security income.”). 

 4 
To perform the fourth and fifth steps, the ALJ must determine the claimant’s 
Residual Functional Capacity (“RFC”). Phillips, 357 F.3d at 1238–1239. The RFC is what 
the claimant is still able to do despite the claimant’s impairments and is based on all 

relevant medical and other evidence. Id. It may contain both exertional and nonexertional 
limitations. Id. at 1242–1243. At the fifth step, the ALJ considers the claimant’s RFC, age, 
education, and work experience to determine if there are jobs available in the national 
economy that the claimant can perform. Id. at 1239. To do this, the ALJ can use either the 
Medical Vocational Guidelines (“grids”), see 20 C.F.R. pt. 404 subpt. P, app. 2, or call a 

vocational expert (“VE”). Id. at 1239–40. 
The grids allow the ALJ to consider factors such as age, confinement to sedentary 
or light work, inability to speak English, educational deficiencies, and lack of job 
experience. Each factor can independently limit the number of jobs realistically available 
to an individual. Id. at 1240. Combinations of these factors yield a statutorily-required 

finding of “Disabled” or “Not Disabled.” Id. 
III. Administrative Proceedings 
Plaintiff was 25 years old at the time she filed her application for DIB and was 30 
at the time of the ALJ’s decision. See Docs. 17-2 at 11, R. 10; 17-3 at 40, R. 131. Plaintiff 
is a resident of Fort Mitchell, Alabama, and lives with her husband and son. See Docs. 17-

2 at 2, R. 1; 17-3 at 42, 47-48, R. 133, 138-39. 
Plaintiff claims that her ability to work is limited by Arnold-Chiari Malformation 
type 1 (“Chiari 1 malformation”), memory loss, depression, mood swings, brain swelling, 

 5 
loss of words, fatigue, numbness, nausea, and insomnia. Doc. 17-4 at 17-8, R. 183-84.5 
Plaintiff previously worked as an account representative and debt collector, credit card 
account manager, financial crime specialist, office tax supervisor, payroll and bookkeeping 

specialist, collections accountant, certified travel agent, and registered tax preparer. Doc. 
17-7 at 30, R. 313. 
Following the administrative hearing, the ALJ found at step one of the five-step 
process that plaintiff had not engaged in substantial gainful activity “during the period from 
her alleged onset date of October 1, 2013 through her date last insured of June 30, 2018[.]” 

Doc. 17-2 at 16, R. 15.6 At step two, the ALJ found that plaintiff suffered from the 
following severe impairments: “Chiari 1 malformation, history of substance abuse 
disorder[.]” Id. At step three, the ALJ found that plaintiff “did not have an impairment or 
combination of impairments that met or medically equaled the severity of one of the listed 
impairments[.]” Id. Next, the ALJ articulated plaintiff’s RFC as follows: 

the claimant had the residual functional capacity to perform light work as 
defined in 20 CFR 404.1567(b) except the individual is restricted from being 
around unprotected elevations and near dangerous moving machinery; she is 
limited to work that needs little or no judgment to do simple duties that can 
be learned on the job in up to a month, meaning unskilled work; the 
individual is limited to jobs having few changes in the workplace and only 
occasional simple decision making; she is able to perform work related 
mental activities, that is, understand, remember and carry out instructions, 

5 Plaintiff’s disability determination explanation lists “lost of words” under allegations of 
impairments, which the court has interpreted as “loss of words” based on other documents in the 
record. See Docs. 17-2 at 21, R. 20; 17-4 at 24, R. 190; 17-13 at 27, R. 830. 

6 During the administrative hearing, the ALJ noted that plaintiff’s first eligible date of disability 
would be October 31, 2013, due to a prior ALJ decision denying plaintiff’s claim of disability 
dated October 30, 2013. Doc. 17-3 at 45-46, R. 136-37. See Doc. 17-4 at 2-12, R. 168-78 (adverse 
decision issued by ALJ John M. Dowling on October 30, 2013). 
 6 
use judgment in making work-related decisions; respond appropriately to 
supervision, co-workers, and work situations; and accommodate changes in 
a routine work setting. 

Id. at 17, R. 16. At step four, the ALJ determined that plaintiff “was unable to perform any 
past relevant work[.]” Id. at 23, R. 22. At step five, based on the plaintiff’s age, education, 
work experience, RFC, and the testimony of the VE, the ALJ found that “there were jobs 
that existed in significant numbers in the national economy that the claimant could have 
performed[.]” Id. at 23-24, R. 22-23. Accordingly, the ALJ determined that plaintiff “was 
not under a disability . . . at any time from October 1, 2013, the alleged onset date, through 
June 30, 2018, the date last insured[.]” Id. at 24, R. 23. 
IV. Issues on Appeal 
On appeal, plaintiff argues that the ALJ erred by (1) finding that plaintiff had no 
severe mental impairments, (2) failing to weigh the medical evidence and to develop the 
record for the pro se claimant fully and fairly, (3) failing to evaluate plaintiff’s subjective 

allegations properly, and (4) failing to consider a vocational evaluation. 
V. Discussion 
1. Mental Impairments 
Plaintiff argues that the ALJ improperly excluded her alleged mental impairments 
at step two because those impairments—depression, anxiety, mood swings, memory loss, 

nervousness, paranoia, difficulty getting along with others, and problems with 
comprehension—affect her ability to perform basic work activities as defined under 20 
C.F.R. § 404.1522(b)(3)-(6). See Doc. 15 at 3-4. Plaintiff asserts that her testimony and he 

 7 
record medical evidence raised a colorable claim of mental impairment and that the ALJ 
failed to apply the “special technique” for examining whether plaintiff had a medically 
determinable mental impairment, as required by the regulations. Id. at 5-6. Plaintiff also 

maintains that 42 U.S.C. § 421(h) requires the ALJ to request an evaluation by a qualified 
psychiatrist or psychologist to assess the severity of her mental impairments. Id. at 6. 
The Commissioner responds that Plaintiff did not present a colorable claim of a 
medically determinable impairment before her date last insured and that the medical record 
evidence does not support the existence of a mental impairment. See Doc. 16 at 5-8. 

Further, the Commissioner argues that, even if plaintiff presented a colorable claim, the 
ALJ’s failure to apply the special technique for mental impairments was harmless because 
the ALJ considered plaintiff’s mental abilities throughout the five-step process and 
included extensive mental limitations in the RFC finding. Id. at 8. 
When a social security claimant presents “a colorable claim of mental impairment, 

the social security regulations require the ALJ to complete a [Psychiatric Review 
Technique Form (“PRTF”)] and append it to the decision, or incorporate its mode of 
analysis into its findings and conclusions” and “[f]ailure to do so requires remand.” Moore 
v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005) (citing Gutierrez v. Apfel, 199 F.3d 
1048, 1051 (9th Cir. 2000); Stambaugh v. Sullivan, 929 F.2d 292, 296 (7th Cir. 1991); Hill 

v. Sullivan, 924 F.2d 972, 975 (10th Cir. 1991); Montgomery v. Shalala, 30 F.3d 98, 100 
(8th Cir. 1994)). Under the relevant regulations, the “special technique” called for by the 
PRTF requires the ALJ to assess plaintiff’s alleged mental impairment in the following 

 8 
four broad functional areas (known as the “Paragraph B” criteria): (1) understanding, 
remembering, or applying information; (2) interacting with others; (3) concentrating, 
persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 

404.1520a(c)(3).7 Those four functional areas must be rated on five-point scale: none, mild, 
moderate, marked, and extreme. 20 C.F.R. 404.1520a(c)(4). Where the ALJ does not make 
a specific finding regarding whether a social security claimant’s mental impairment claim 
is colorable, it may be inferred that the allegation is at least colorable where the ALJ 
analyzes and discusses evidence of mental impairment(s). See Mills v. Comm’r of Soc. Sec., 

659 F. App’x 541, 542 (11th Cir. 2016) (citing Richardson v. United States, 468 U.S. 317, 
326 n.6 (1984)); see also Reynolds v. Comm’r of Soc. Sec., 457 F. App’x 850, 852 (11th 
Cir. 2012) (in the context of determining RFC, an ALJ must complete the PTRF whenever 
a social security claimant alleges mental disability). 
As the Commissioner argues, the ALJ did not apply the special technique to assess 

plaintiff’s mental impairment either by completing the PRTF or by incorporating the 
technique’s mode of analysis into her findings and conclusions. The ALJ heard testimony 
from plaintiff that, despite the fact that she did not receive mental health treatment during 
her alleged disability period, she suffered from anxiety and depression, she had a history 
of mental health treatment as a child, and she had received a referral to a psychiatrist. See 

Doc. 17-3 at 58-59, R. 149-50. The report of the state agency medical consultant, appended 

7 Prior to January 16, 2017, the four functional areas consisted of activities of daily living, social 
functioning, concentration, persistence or pace, and episodes of decompensation. 20 C.F.R. Part 
4, subpt. P, Appendix 1 (2016). 
 9 
to plaintiff’s initial disability determination explanation, examined plaintiff’s allegations 
of mental impairment and conducted the PRTF assessment. See Doc. 17-4 at 23-24, R. 189-
90. The ALJ’s decision shows that the ALJ clearly analyzed and discussed evidence of 

plaintiff’s mental impairment. The ALJ found that plaintiff had memory and concentration 
problems (Doc. 17-2 at 19, R. 18). The ALJ also examined medical records from Dr. 
Thomas A. Staner, which reflected that plaintiff reported anxiety, nervousness, and 
memory loss, among other symptoms, in March 2017, and from Dr. James Robinson, who 
noted that plaintiff reported difficulty with memory in July 2017. Id. at 21, R. 20. The ALJ 

also examined the report of Dr. Scott Stewart, who noted in October 2016 that plaintiff 
reported bad memory problems and vegetative signs of depression. Id. at 20, R. 19. Dr. 
Stewart offered the opinion that plaintiff’s presentation was “vague, evasive, and 
inconsistent,” that “[s]he did not appear motivated to present her problems and abilities in 
an accurate manner,” and that no valid diagnosis could be formulated because the 

information received during the evaluation was unreliable. Id. The ALJ also reviewed a 
third-party function report, which indicated that plaintiff could not go out alone because of 
memory problems and that depression, paranoia, and isolation affected her ability to 
engage in her hobbies and interact with others. See id. at 23, R. 22; Doc. 17-7 at 25-27, R. 
308-10. The ALJ analyzed Dr. Stewart’s opinion, as well, giving it “some weight,”8 and 

also reviewed the third-party function report, assigning it “little weight.” Doc. 17-2 at 22-

8 Based on the content of the ALJ’s statement and her reference to exhibit B9F, which is the 
consultative psychological report produced by Dr. Scott Stewart, the court understands the ALJ’s 
statement according “some weight to the opinion of Dr. Lewis the consultative psychologist” to 
refer to Dr. Stewart’s report. Docs. 17-2 at 22, R. 21; 17-10 at 63-65, R. 611-13 (Exhibit No. B9F). 
 10 
23, R. 21-22. The ALJ made no explicit finding regarding whether plaintiff’s mental 
impairment claim was colorable. 
The court finds that, because the ALJ discussed and analyzed evidence of plaintiff’s 

alleged mental impairment, plaintiff’s allegation was at least colorable. Under such 
circumstances, the regulations require the ALJ to apply the special technique outlined in 
20 C.F.R. 404.1520a(c), and to complete and append the PRTF to her decision or 
incorporate the mode of analysis into her findings and conclusions. In the instant case, the 
ALJ failed to apply the special technique to assess plaintiff’s mental impairments and, 

therefore, the Commissioner’s decision is due for remand on this basis. The ALJ did not 
err in failing to order a consultative exam by a qualified psychologist or psychiatrist.9 
2. Medical Evidence 
Plaintiff argues that the ALJ improperly failed to weigh the medical opinions of 
treating physicians, failed to articulate good cause for not giving controlling weight to the 

opinions of those physicians, failed to articulate the weight she assigned to various medical 
opinions, and failed to develop the record regarding plaintiff’s physical residual functional 
capacity sufficiently. Doc. 15 at 10-12. In response, the Commissioner contends that the 
ALJ’s decision regarding plaintiff’s physical impairments was supported by substantial 

9 Plaintiff’s reliance on McCall v. Bowen, 846 F. 2d 1317, 1320 (11th Cir. 1988), intepreting 42 
U.S.C. § 421(h) as requiring the ALJ to order a consultative examination by a qualified psychiatrist 
or psychologist before issuing a decision, is misplaced. The plain language of 42 U.S.C. § 421(h) 
makes it clear that the section applies to initial determinations and ALJ decisions or final decisions 
by the Commissioner. See Sneed v. Barnhart, 214 F. App’x 883, 886 (11th Cir. 2006) (citing 
Plummer v. Apfel, 186 F.3d 422, 423 (3d Cir. 1999)); Fernandez v. Saul, 2020 U.S. Dist. LEXIS 
105288 at **11-12 (M.D. Ala. June 16, 2020). 
 11 
evidence, that the record evidence cited by plaintiff does not include medical opinions that 
the ALJ was required to weigh, and that, in any case, such evidence supports the ALJ’s 
decision. 

Medical opinions, as defined by the regulations, “are statements from acceptable 
medical sources that reflect judgments about the nature and severity of [a claimant’s] 
impairments(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can 
still do despite impairment(s), and [a claimant’s] physical or mental restrictions.” 20 C.F.R. 
404.1527(a)(1). Medical records which contain only general physical information or 

referrals, without judgments about the nature and severity of impairments or a claimant’s 
ability to work, do not qualify as medical opinions. See Martinez v. Acting Comm’r of Soc. 
Sec., 660 F. App’x 787, 793 (11th Cir. 2016); Winschel v. Comm’r of Soc. Sec., 631 F.3d 
1176, 1179 (11th Cir. 2011); 20 C.F.R. § 404.1527(a)(1). 
An ALJ must state with particularity the weight she assigns to different medical 

opinions and the reasons supporting that assignment of weight. See Sharfarz v. Bowen, 825 
F.2d 278, 279 (11th Cir. 1987) (per curiam). Failure to do this is reversible error. 
MacGregor v. Bowen, 785 F.2d 1050, 1053 (11th Cir. 1986). As this court has explained: 
Weighing the opinions and findings of treating, examining, and non-
examining physicians is an integral part of steps four and five of the ALJ’s 
sequential evaluation process for determining disability. In Winschel v. 
Commissioner of Social Security, 631 F.3d 1176, 1178-79 (11th Cir. 2011), 
the Eleventh Circuit held that whenever a physician offers a statement 
reflecting judgments about the nature and severity of a claimant’s 
impairments, including symptoms, diagnosis, and prognosis, what the 
claimant can still do despite his or her impairments, and the claimant’s 
physical and mental restrictions, the statement is an opinion requiring the 
ALJ to state with particularity the weight given to it and the reasons therefor. 
 12 
Id. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 
825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that “’[i]n 
the absence of such a statement, it is impossible for a reviewing court to 
determine whether the ultimate decision on the merits of the claim is rational 
and supported by substantial evidence.’” Id. (quoting Cowart v. Schweiker, 
662 F.2d 731, 735 (11th Cir. 1981)). See also MacGregor v. Bowen, 786 F.2d 
1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight 
given to opinions and the reasons therefor constitutes reversible error); Lewis 
v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly 
articulate reasons for giving less weight to the opinion of a treating physician 
constitutes reversible error). 

Rudolph v. Berryhill, 2018 U.S. Dist. LEXIS 51177, at **13-14 (M.D. Ala. Mar 28, 2018) 
(quoting Albery v. Comm’r of Soc. Sec., 2012 U.S. Dist. LEXIS 91829, at *7 (M.D. Fla. 
June 7, 2012), report and recommendation adopted, 2012 U.S. Dist. LEXIS 91832 (M.D. 
Fla. July 3, 2012), and citing Winschel, 631 F.3d at 1179). 
Further, the opinion of a treating physician “must be given substantial or 
considerable weight unless good cause is shown to the contrary.” Phillips v. Barnhart, 357 
F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d at 1440). If the ALJ 
chooses to disregard the opinion of a treating physician, she must “clearly articulate” the 
reasons for doing so. Id.; see also Winschel, 631 F.3d at 1179; 20 C.F.R. § 404.1527(c)(2) 
(“good reasons” must always be given in the decision for the weight given to a treating 
source’s medical opinion). “[G]ood cause exists when the: (1) treating physician’s opinion 
was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating 
physician’s opinion was conclusory or inconsistent with the doctor’s own medical 
records.” Id. Failure to articulate clearly the reasons for giving less weight to a treating 
 13 
physician’s opinion is reversible error. See Lewis, 125 F.3d at 1440. Multiple factors must 
go into the ALJ’s weighing of a medical opinion: 
[T]he Social Security regulations command that the ALJ consider (1) the 
examining relationship; (2) the treatment relationship, including the length 
and nature of the treatment relationship; (3) whether the medical opinion is 
amply supported by relevant evidence; (4) whether an opinion is consistent 
with the record as a whole; and (5) the doctor’s specialization. Non-
examining physicians’ opinions are entitled to little weight when they 
contradict opinions of examining physicians and do not alone constitute 
substantial evidence. 

Schink v. Comm’r of Soc. Sec., 935 F.3d 1245, 1260 (11th Cir. 2019) (citing Sharfarz, 825 
F.2d at 280; 20 C.F.R. § 404.1527(c)). 
Plaintiff submits that medical record evidence from Ronald Moon, D.O.; Bill 
Berryman, M.D.; Hassan Fathallah-Shaykh, M.D.; and Sameera Davuluri, M.D., were 
medical opinions which the ALJ failed to consider properly or to assign a particular weight. 
See Doc. 15 at 8-10. The court summarizes these in turn. 
Records from Dr. Moon, dated from November 19, 2013 to July 22, 2014, include 
a medical history form, pain diagram, evaluations, and results from imaging procedures, 
but they largely consist of clinic follow-up notes and test results. See Docs. 17-11 at 2-65, 
R. 625-88; 17-12 at 2-16, R. 689-704. Dr. Moon’s initial evaluation form notes plaintiff’s 
reported symptoms (including pain, stiffness, and discomfort in her low back, neck, upper 
back, head, and her legs and feet, numbness and tingling, headaches, weakness), as well as 
a range of reproducible symptoms (demonstrated with active/passive range of motion 
exercises and provocative testing); a number of diagnostic impressions (such as 
degenerative disc disease, chronic recurrent headaches, and pain/paresthesias in plaintiff’s 
 14 
extremities); and a treatment plan. Doc. 17-12 at 6-13, R. 693-700. Dr. Moon’s clinic 
follow-up notes, which span the course of nine months, include a review of systems; results 
of a physical exam; recording of neurological and musculoskeletal conditions, including 

range of motion, stability, and strength; myofascial conditions; treatment notes; diagnostic 
impressions; and treatment plans and recommendations. The ALJ did not assign a weight 
to records from Dr. Moon in her decision. 
Records from Dr. Berryman, dated from August 3, 2016 to June 12, 2017, consist 
of clinical encounter summaries, imaging orders, and lab results. See Docs. 17-9 at 81-90, 

R. 540-49; 17-14 at 6-66, R. 839-99; Doc. 17-15 at 7-31, R. 906-30. Dr. Berryman’s 
clinical encounter summaries include plaintiff’s vital readings, results of recent tests—for 
instance, drug screenings, or electrocardiograms; routine screenings such as the Screener 
and Opioid Assessment for Patients with Pain (SOAPP) and Beck Depression Inventory; 
a review of medications, allergies, medical and social history, chief complaint(s); a review 

of systems; history of present illnesses; physical exam notes; document review; review of 
imaging results; assessment/plan notes; and discussion notes. Notes from Dr. Berryman’s 
first visit with plaintiff include a review of her symptoms and medical history; assessment 
of the severity of her physical symptoms and pain—e.g., the range of flexion and extension 
in her cervical and lumbar spine; evaluation of her pain level; and an initial treatment plan 

together with a recommendation to have surgery. See Doc. 17-9 at 81-90, R. 540-49. The 
ALJ did not assign a weight to records from Dr. Berryman in her decision. 

 15 
Records from Dr. Fathallah-Shaykh, dated from October 31, 2016 to February 24, 
2017, consist of clinic notes and radiology exam notes. See Docs. 17-10 at 67-76, R. 615-
24; 17-12 at 95-97, R. 782-84. The records also include an application for disability access 

parking privileges to the Alabama Department of Revenue signed by Dr. Fathallah-Shaykh. 
Doc. 17-7 at 71, R. 353. Dr. Fathallah-Shaykh’s clinic notes, from a single visit on October 
31, 2016, include an initial neurological evaluation, a review of plaintiff’s symptoms, 
medical history, review of systems, medications, social history, physical examination, and 
test results. See Doc. 17-10 at 67-76, R. 615-24. The clinic notes reflect that plaintiff 

reported pain in the lower spine radiating up, throbbing headaches, nausea, short-term 
memory loss, and difficulty with daily routine, as well as a diagnosis of Chiari 1 
malformation and a possible small cholesterol granuloma in the right petrous apex, chronic 
pain, including headaches, and orders for several tests and a follow-up appointment. See 
id. The radiology exam notes, ordered by Dr. Fathallah-Shaykh but interpreted by various 

other doctors, report objective medical information and do not include judgments about the 
nature or severity of plaintiff’s symptoms. See Doc. 17-12 at 95-97, R. 782-84. The ALJ 
summarized Dr. Fathallah-Shaykh’s notes in her decision but did not assign a weight to 
them. 
Records from Dr. Davuluri, dated from September 23, 2016 to May 10, 2017, 

consist of clinic notes, radiology exam notes, lab test results, and a letter—addressed 
generally “To Whom It May Concern” and dated February 27, 2017. See Docs. 17-10 at 
15-22, R. 563-70; 17-12 at 111-117, R. 798-804; 17-14 at 67, R. 900; 17-15 at 2, R. 901. 

 16 
Dr. Davuluri’s clinic notes, from a single visit on September 23, 2016, include a review of 
plaintiff’s symptoms, medical history, review of systems, medications, social history, 
physical examination, and a diagnosis of Chiari 1 malformation and dysuria as well as a 

referral to neurology. See Doc. 17-10 at 12-22, R. 563-70. The radiology exam notes, 
ordered by Dr. Davuluri but interpreted by Dr. Mark Langston, report objective medical 
findings related to plaintiff’s cervical spine, pelvis, sacrum, and coccyx. See Docs. 17-12 
at 111-14, R. 798-801; 17-15 at 1-2, R. 900-01. Dr. Davuluri’s letter states that plaintiff is 
a patient of UAB Family Medicine, details plaintiff’s medical problems, and lists the 

various medical specialties—neurology, neurosurgery, pain medicine, and physical 
therapy—under which plaintiff has received treatment. See id. at 115, R. 802. The ALJ did 
not assign a weight to Dr. Davuluri’s records in her decision. 
A treating source is “an acceptable medical source who provides . . . medical 
treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a 

claimant].” 20 C.F.R. § 404.1527(a)(2). An ongoing treatment relationship is one in which 
“the medical evidence establishes that [a claimant] see[s], or ha[s] seen, the course with a 
frequency consistent with accepted medical practice for the type of treatment and/or 
evaluation required for [a claimant’s] medical condition(s).” Id. The records summarized 
above suggest that the ALJ should have considered Dr. Moon and Dr. Berryman as treating 

sources based on their ongoing treatment relationship with plaintiff. Further, the content of 
the records, which include judgments about the nature and severity of plaintiff’s 
impairments, symptoms, diagnoses, and treatments, indicate that those judgments should 

 17 
be considered medical opinions for which the ALJ must assign a weight and articulate the 
reasons supporting assignment of that weight. The ALJ failed to consider and to assign 
weight to the medical opinions of Dr. Moon and Dr. Berryman as treating source opinions, 

and the failure to do so constitutes reversible error. 
3. Plaintiff’s Subjective Allegations 
Plaintiff argues that the ALJ failed to consider plaintiff’s subjective statements 
regarding her impairments properly in making her decision. Plaintiff maintains that the 
ALJ’s conclusion that plaintiff’s statements concerning the intensity, persistence, and 

limiting effects of her symptoms were not entirely consistent with the record evidence was 
directly contradicted by documentation that plaintiff had begun seeing a psychiatrist, and 
prior records that document symptoms of depression and anxiety. Doc. 15 at 14-15. 
The Commissioner argues that substantial evidence in the form of a consultative 
examination report, plaintiff’s possession of a driver’s license and ability to drive herself 

to the hearing, her ability to take care of her child while her husband worked 12 hours per 
day, her community college attendance, her lack of mental health treatment, her testimony 
that she had not taken any medication in over one year, and the largely unremarkable 
examinations and diagnostic imaging in the record evidence supported the ALJ’s 
determination that plaintiff’s subjective complaints were inconsistent with the objective 

medical evidence and other evidence. Doc. 16 at 13-14. 
“Credibility determinations are the province of the ALJ and we will not disturb a 
clearly articulated credibility finding supported by substantial evidence.” Mitchell v. 

 18 
Comm’r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014) (citing Moore, 405 F.3d at 1212; 
Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995)) (internal citations omitted). As the 
Eleventh Circuit has explained: 

Although this circuit does not require an explicit finding as to credibility, 
. . . the implication must be obvious to the reviewing court. The credibility 
determination does not need to cite particular phrases or formulations but it 
cannot merely be a broad rejection which is not enough to enable [the district 
court or this Court] to conclude that [the ALJ] considered [the claimant’s] 
medical condition as a whole. 

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and 
citations omitted). The ALJ’s detailed analysis of plaintiff’s credibility far surpasses this 
minimum standard. 
As discussed in section 1 above, the ALJ considered plaintiff’s testimony and 
circumstances, including those cited by the Commissioner, as well as numerous medical 
records in making a determination concerning plaintiff’s testimony regarding her 
symptoms of mental illness. The ALJ considered findings (1) from Dr. Fathallah-Shaykh, 
which noted that plaintiff retained significant strength and there was no electrophysiologic 
evidence of right lumbosacral radiculopathy or large fiber peripheral neuropathy to explain 
plaintiff’s symptoms; (2) from Dr. Staner, which noted a normal neurological examination 
and a motor examination of 5/5; (3) from Dr. Vaphiades, which included a brain MRI that 
showed an overall stable exam, two lumbar spine MRIs that showed no pathologic findings, 
and a brain MRI that showed no acute abnormality; and (4) from Dr. Robinson, which 
noted independent ambulation. See Doc. 17-2 at 19-22, R. 18-21. The ALJ found that 
plaintiff was not as limited as she alleged, and that her statements concerning the intensity, 
 19 
persistence, and limiting effects of her symptoms were not entirely consistent with the 
medical evidence and other evidence in the record. See id. at 19, 22 R. 18, 21. Substantial 
evidence supports the ALJ’s findings regarding the credibility of plaintiff’s testimony. 

4. Vocational Evaluation 
Plaintiff argues that the ALJ erred in failing to mention a vocational evaluation taken 
on May 20, 2018, or to indicate whether she gave it any weight because, although a 
vocational specialist’s opinions on a claimant’s ability to work are not binding on the ALJ, 
they still must be weighed along with all other evidence. Doc. 15 at 17-18. The 

Commissioner maintains that the vocational evaluation does not warrant remand of this 
case because the evaluator was not a medical source, because statements from non-
acceptable medical sources are not medical opinions, and because such statements are not 
entitled to any special significance or consideration. 
The vocational evaluation, conducted by Carolyn Goode, an “ARDS ITE”10 

counselor with Easter Seals West in Selma, Alabama, noted that plaintiff had significant 
difficulty with her vision during the evaluation. Doc. 17-8 at 41, R. 416. The evaluation 
included the Wide Range Achievement Test-IV (“WRAT-4”); CareerScope, a test of 
visual-motor skills; NEO-4; and Behavior Rating Inventory of Executive Functioning 
(BRIEF-A). The evaluation provides no indication that Goode is a medical source. Goode 

found that the results of the WRAT-4 were questionable because plaintiff experienced 

10 The court understands these abbreviations as follows: Alabama Department of Rehabilitation 
Services (“ADRS”); Independence Through Employment (“ITE”). 
 20 
headaches and blurred vision during the test, that plaintiff was unable to complete the 
CareerScope, that the results of her visual-motor skills test were far lower than otherwise 
might be expected due to her vision problems and headaches, that it was doubtful that 

plaintiff’s behavioral and cognitive functioning were as seriously compromised as the 
results of her BRIEF-A test would indicate, and that the NEO-4 test indicated that plaintiff 
had average agreeableness, extraversion, and conscientiousness, and low-range openness. 
See id. at 42-46, R. 417-21. The evaluation noted that a functional capacity evaluation of 
plaintiff’s physical capacity was not performed, but that available reports and general 

observation were reviewed to analyze the impact of her stated disabilities. 
As a vocational counselor, Goode is a nonmedical source as defined by the social 
security regulations, and the report is considered evidence from a nonmedical source. See 
20 C.F.R. §§ 404.1502(e); 404.1513(a). “Although the ALJ should consider evidence from 
non-medical sources, the ALJ is not required to assign the evidence any particular weight.” 

Farnsworth v. Soc. Sec. Admin., 636 F. App’x 776, 782-83 (11th Cir. 2016) (citing SSR 
06-03p, 2006 SSR LEXIS 5 at *13 (Aug. 9, 2006)). “Instead, whether and how much 
weight the ALJ should give this kind of evidence depends on the particular facts of the case 
and a variety of factors, including whether the opinion is consistent with other evidence in 
the record.” Id. at 783 (citing 2006 SSR LEXIS 5 at *14). Additionally, there is no rigid 

requirement for the ALJ to refer to every piece of evidence in her decision so long as the 
ALJ’s decision is not a broad rejection that is insufficient to enable the court to conclude 
that the claimant’s medical condition was considered as a whole. See Dyer, 395 F.3d at 

 21 
1211. The ALJ’s decision, which details plaintiff’s testimony and the medical records, does 
not have the hallmarks of a broad rejection which would not enable the court to conclude 
that plaintiff’s medical condition was considered as a whole. Further, as noted in the 

evaluation, the assessment of plaintiff’s limitation was based on a review of reports and 
not a physical assessment. Thus, the vocational evaluation at issue is an insufficient basis 
for remand. 
VI. Conclusion and Order 
Accordingly, for the reasons discussed, the decision of the Commissioner will be 

reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) so that the 
Commissioner can conduct additional proceedings consistent with this opinion. The court 
does not reach plaintiff’s arguments that are not expressly discussed herein. The court 
expects that the Commissioner will consider plaintiff’s arguments as to those issues on 
remand as well, and will develop the record as is necessary in areas not expressly 

considered in this opinion. 
Done, on this the 30th day of September, 2020. 
 /s/ Susan Russ Walker 
 Susan Russ Walker 
 United States Magistrate Judge 

 22